IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ALVIN JACKSON, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| v. | § | |
| | § | **4:12-CV-318** |
| FRISCO INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| **Defendant.** | § | |

### PLAINTIFF'S THIRD AMENDED COMPLAINT

### I.

### INTRODUCTION

Plaintiff Alvin Jackson (Plaintiff) files this Third Amended Complaint (Complaint) against Defendant Frisco Independent School District (Defendant).

### II.

### PARTIES

1.    Plaintiff Alvin Jackson is a resident of the state of Texas.

2.    Defendant Frisco Independent School District is a school district organized under the laws of the state of Texas.  Defendant has appeared and answered.

### III.

### JURISDICTION

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law.

## IV.

## VENUE

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in Collin County, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Collin County.

## V.

## FACTS

5.      Plaintiff taught and coached at Frisco High School in FISD from August 2010 until he was wrongfully terminated in July 2012.

6.      At the time, Plaintiff was the only black coach and core subject teacher at Frisco High School.

7.      During Plaintiff's first year at Frisco High School (2010-2011 school year), there were three classroom "walkthroughs" (an ad hoc subjective process by which the teacher is evaluated by another teacher or administrator), in Plaintiff's classroom.

8.      For all three walkthroughs, Plaintiff was found to be fully proficient in his teaching.

9.      On April 18, 2011, the end of the 2010-2011 school year, Cade Smith, Associate Principal of Frisco High School, completed a Professional Development and Appraisal System Summative Annual Appraisal on Plaintiff (April 2011 Appraisal).

10.     Smith ranked Plaintiff proficient or exceeding compliance in all areas.

11.     At the beginning of the 2011-2012 school year (August 18, 2011), Plaintiff spoke with Smith about the difficulties he was having working with Coach Sam Reiter.

12.     Plaintiff advised Smith that he wanted to file a formal complaint with Defendant's Human Resources Department of unlawful race discrimination by Reiter.

13.     Plaintiff specifically told Smith that he believed the difficulties with Reiter were race related.

14.     During this meeting, Smith instructed Plaintiff not to contact Human Resources, saying he (Smith) would handle the issues.

15.     Unbeknownst to Plaintiff, Reiter and Defendant's Superintendent of Schools, Rick Reedy, are close friends.

16.     On October 19, 2011, less than two months after Plaintiff complained of race discrimination concerning Reedy's friend, Reiter, and only two months into the 2011-2012 school year, Smith completed another Professional Development and Appraisal System Summative Observation Summary Appraisal (October 2011 Appraisal) on Plaintiff.

17.     Unlike the April 2011 Appraisal, Smith suddenly ranked Plaintiff below expectations in a majority of areas.

18.     On October 25, 2011, Plaintiff requested a second evaluation.

19.     On November 7, 2011, Defendant placed Plaintiff on an Intervention Plan for Teacher in Need of Assistance (TINA).

20.     Part of this TINA required Plaintiff to submit and upload lesson plans to their computer system to be reviewed by Smith.

21.     Plaintiff was never required to do this before and in fact never submitted lesson plans for the 2010-2011 school year because Plaintiff was previously told by Andy Steele that none of the coaches submitted lesson plans and Plaintiff shouldn't either.

22.     The TINA was set to expire on February 17, 2012.

23.     On November 10, 2011, Kenny Durand of Wakeland High School performed a second evaluation of Plaintiff, as Plaintiff had requested.

24.     According to Durand's assessment, Plaintiff was proficient in all areas except one, and there, he missed proficiency by a single point.

25.     From this point on, Plaintiff was subjected to a constant barrage of walkthroughs by Defendant, the sole purpose of which was to "build a file" so it could terminate him for raising concerns of racial discrimination (again, Frisco High School's faculty is nearly all-white, as are *all* of Defendant's Board members).

26.     On November 11, 2011, Erica Castille was required to perform a walkthrough on Plaintiff's World History class; no deficiencies were noted.

27.     On November 17, 2011, Sylvia Palacios, Principal of Frisco High School, performed a walkthrough of Plaintiff's World History class; no deficiencies were noted.

28.     In fact, Palacios noted that a rigorous, relevant, and aligned curricula-learning targets of the lesson existed, and that all learning targets were aligned to Defendant curricula.

29.     On January 24, 2012, Jon Boettcher was required to perform a walkthrough of Plaintiff's World History class; again, no deficiencies were noted.

30.     On January 31, 2012, Plaintiff approached Palacios to complain of the racial discrimination and now the unbridled retaliation.

31.     Palacios' response to Plaintiff's concerns was telling:  Palacios told Plaintiff he was not a "good fit" for "this school district" and suggested that Plaintiff resign, in exchange for which she would give Plaintiff a good letter of recommendation.

32.     Not surprising, Palacios never investigated Plaintiff's concerns of race discrimination and retaliation.

33.     On February 17, 2012, Defendant notified Plaintiff that it intended to non-renew his teaching contract for the 2012-2013 school year.

34.     Also on this date, Defendant put Plaintiff on another bogus TINA, with both Smith and Palacios claiming that Plaintiff had not successfully completed the initial TINA.

35.     On February 28, 2012, eleven days after Defendant notified Plaintiff that his contract would not be renewed, and despite Plaintiff still teaching and coaching at Frisco High School, Defendant intentionally omitted Plaintiff's name from the school program for the Lincoln High School v. Frisco High School basketball game.

36.     On March 1, 2012, Kerry Antwine was required to perform yet another walkthrough of Plaintiff's World History class; and again, no deficiencies were noted.

37.     Instead, Antwine noted all learning targets were stated, aligned, and evident to the students.

38.     On March 21, 2012, Smith himself conducted yet another walkthrough of Plaintiff's World History class; Smith, of course, noted an alleged deficiency—that the lesson of the class was "broad."

39.     On March 22, 2012, Palacios told Plaintiff that Defendant's all-white Board of Trustees would vote to non-renew Plaintiff's contract for the 2012-2013 school year at its April 9, 2012 meeting.

40.     Defendant continued with the retaliation however.

41.     On March 28, 2012, Richard Oldham was required to conduct yet another walkthrough of Plaintiff's World History class; again, no deficiencies were noted.

42.     In fact, Oldham noted that all learning targets were stated, aligned, and evident to the students.

43.     On April 17, 2012, Castille was required to conduct yet another walkthrough of Plaintiff's World History class; and again, no deficiencies were noted.

44.     In fact, Castille noted all learning targets were stated, aligned, and evident to the students.

45.     After approximately nine walkthroughs of Plaintiff's classes in less than six months' time (during which there was a lengthy Winter Break and another lengthy Spring Break when school was not in session), on April 23, 2012, Plaintiff formally complained to Defendant's Board President, Dan Mossakowski, Defendant's Assistant Superintendent for Human Resources Linda Bass, and Superintendent of Schools Rick Reedy.

46.     Plaintiff told these three of his unfair treatment because of his race as well as the school's blatant retaliation following him voicing concerns about racially discriminatory treatment.

47.     On May 4, 2012, Plaintiff met with Bass and Brad Longfellow to discuss fully his concerns of racial discrimination and retaliation.

48.     Before this meeting, Plaintiff had previously submitted names and specific instances of the discrimination and retaliation to Bass.

49.     Three days after their meeting, after performing absolutely no investigation of any kind, Bass wrote to Plaintiff and summarily denied Plaintiff's claims of race discrimination and retaliation.

50.     Incredibly, Bass flatly lied and stated that Plaintiff "chose not to provide any information and/or evidence in support of" his allegations.

51.     Subsequently, Bass admitted, under oath, that Plaintiff had provided her a list of names, and that she refused to contact a single person listed.

52.     Bass also subsequently admitted, again under oath, that she had conducted no investigation into Plaintiff's claims before dismissing them out of hand.

53.     Again, Bass is supposed to be the head human resources professional for Defendant.

54.     On April 24, 2012, Smith conducted another Professional Development and Appraisal System Summative Annual Appraisal on Plaintiff.

55.     Now, Smith rated Plaintiff below expectations in several of the areas addressed.

56.     Yet, on May 3, 2012, Boettcher was required to conduct yet another walkthrough of Plaintiff's World History class (the tenth in seven months); yet again, no deficiencies were noted.

57.     Rather, Boettcher noted all learning targets were stated, aligned, and evident to the students.

58.     On May 7, 2012, Defendant's Board notified Plaintiff that it had scheduled a hearing on the non-renewal of his teaching contract for the 2012-2013 school year.

59.     The letter stated the hearing would be *the following day*, May 8, 2012, at 11:00 a.m.

60.     Thus, Defendant gave Plaintiff *less than twenty-four hours' notice of this kangaroo court "hearing."*

61.     What is more, *Defendant arbitrarily allocated only forty-five minutes per side to conduct this "hearing."*

62.     Finally, though previously requested in writing, Defendant for the first time notified Plaintiff of the witnesses and exhibits it intended to call and introduce for this "hearing."

63.     Not surprisingly, Defendant's Board voted to non-renew Plaintiff's teaching contract for the 2012-2013 school year.

## VI.

## CONDITIONS PRECEDENT

64.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on April 11, 2012, and this charge was duel filed with the Texas Workforce Commission.

65.     The Charge was filed within 180 days after Plaintiff was notified that Defendant intended to non-renew his teaching contract for the 2012-2013 school year.

66.     The EEOC issued Plaintiff a right to sue letter on April 11, 2012.

67.     Furthermore, more than 180 days have passed since Plaintiff filed his Charge.

68.     Plaintiff has timely exhausted all of his administrative remedies.

## VII.

## CAUSES OF ACTION

A.     **First Cause of Action—Race Discrimination—Title VII**

69.     Plaintiff incorporates each of the foregoing paragraphs.

70.     Defendant discriminated against Plaintiff and terminated his employment because of his race/color.

71.     Defendant's actions violated 42 U.S.C. § 2000e-2(a).

B.     **Second Cause of Action—Race Discrimination—42 U.S.C. § 1981**

72.     Plaintiff incorporates each of the foregoing paragraphs.

73.     Defendant discriminated against Plaintiff and terminated his employment because of his race/color.

74.     Defendant's actions violated 42 U.S.C. § 1981.

**C.     Third Cause of Action—Race Discrimination—TCHRA**

75.     Plaintiff incorporates each of the foregoing paragraphs.

76.     Defendant discriminated against Plaintiff and terminated his employment because of his race/color.

77.     Defendant's actions violated section 21.051 of the Texas Labor Code.

**D.     Fourth Cause of Action—Color Discrimination—Title VII**

78.     Plaintiff incorporates each of the foregoing paragraphs.

79.     Defendant discriminated against Plaintiff and terminated his employment because of his race/color.

80.     Defendant's actions violated 42 U.S.C. § 2000e-2(a).

**E.     Fifth Cause of Action—Color Discrimination—42 U.S.C. § 1981**

81.     Plaintiff incorporates each of the foregoing paragraphs.

82.     Defendant discriminated against Plaintiff and terminated his employment because of his race/color.

83.     Defendant's actions violated 42 U.S.C. § 1981.

**F.     Sixth Cause of Action—Color Discrimination—TCHRA**

84.     Plaintiff incorporates each of the foregoing paragraphs.

85.     Defendant discriminated against Plaintiff and terminated his employment because of his race/color.

86.     Defendant's actions violated section 21.051 of the Texas Labor Code.

87.

**G.     Seventh Cause of Action—Unlawful Retaliation—Title VII**

88.     Plaintiff incorporates each of the foregoing paragraphs.

89.     Plaintiff engaged in protected activity as set forth in 42 U.S.C. § 2000e-3(a).

90.     In response, Defendant retaliated against Plaintiff and ultimately terminated his employment.

91.     Defendant's actions violate 42 U.S.C. § 2000e-3(a).

**H.     Eighth Cause of Action—Unlawful Retaliation—42 U.S.C. § 1981**

92.     Plaintiff incorporates each of the foregoing paragraphs.

93.     Defendant retaliated against Plaintiff and ultimately terminated his employment.

94.     Defendant's actions violate 42 U.S.C. § 1981.

**I.     Ninth Cause of Action—Unlawful Retaliation—TCHRA**

95.     Plaintiff incorporates each of the foregoing paragraphs.

96.     Plaintiff engaged in protected activity as set forth in Texas Labor Code section 21.055.

97.     In response, Defendant retaliated against Plaintiff and ultimately terminated Plaintiff's employment.

98.     Defendant's actions violated section 21.055 of the Texas Labor Code.

## VIII.

## DAMAGES

99.     Plaintiff incorporates each of the foregoing paragraphs.

100.    Defendant's actions violated 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a), which entitle Plaintiff to recover from Defendant back pay, front pay, as well as pre-judgment and post-judgment interest.

101.    Plaintiff is also entitled to recover from Defendant compensatory damages as provided for under 42 U.S.C. § 1981a(a)(1).

102.     Because Defendant's actions were done with malice and/or reckless indifference to Plaintiff's federally-protected rights, Plaintiff is entitled to recover from Defendant punitive damages as provided for under 42 U.S.C. § 1981a(b)(1).

103.     Defendant's actions also violated 42 U.S.C. § 1981, which entitles Plaintiff to recover back pay and compensatory damages.

104.     Because Defendant's actions were done willfully and with gross disregard for Plaintiff's rights, Plaintiff is also entitled to recover from Defendant punitive damages.

105.     Plaintiff seeks all damages available to him under federal law.

106.     Defendant's actions also violated the Texas Commission on Human Rights Act, which entitles Plaintiff to recover from Defendant back pay, front pay, compensatory damages, as well as pre-judgment and post-judgment interest.

107.     Because Defendant's actions were done with malice and/or reckless indifference to Plaintiff's state-protected rights, Plaintiff is entitled to recover from Defendant punitive damages.

108.     Plaintiff seeks all damages available to him under the TCHRA.

## IX.

## ATTORNEYS' FEES AND COSTS

109.     Plaintiff incorporates each of the foregoing paragraphs.

110.     Plaintiff retained the services of undersigned counsel to prosecute his claims.

111.     Pursuant to 42 U.S.C. § 2000e-5(k) and Texas Labor Code section 21.259, Plaintiff is entitled to recover a reasonable attorneys' fee from Defendant, including reasonable expert fees and costs.

# X.

## JURY DEMAND

112.    Plaintiff demands a trial by jury.

# XI.

## CONCLUSION AND PRAYER

113.    Plaintiff Alvin Jackson respectfully requests that Defendant Frisco Independent

School District be cited to appear and answer, and that upon final trial of this matter, the Court

enter judgment awarding Plaintiff:

     A.     Back pay and front pay (including benefits) as determined by the jury;

     B.     Compensatory damages as determined by the jury;

     C.     Punitive damages as determined by the jury;

     D.     Reasonable attorneys' fees and expert fees;

     E.     Courts costs;

     F.     Pre-judgment and post-judgment interest at the rate set by law; and

     G.     All legal or equitable relief this Court deems proper.

Respectfully submitted,

/s/ Matthew R. Scott
MATTHEW R. SCOTT
Texas Bar No. 00794613
JOE KENDALL
Texas Bar No. 11260700
JAMIE J. MCKEY
Texas Bar No. 24045262
JAVIER PEREZ
Texas Bar No. 24083650
**KENDALL LAW GROUP, LLP**
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
214-744-3000 / 214-744-3015 (Facsimile)
**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of this document was forwarded to all counsel of record in this case through the Court's ECF system on June 11, 2013.


 /s/ Matthew R. Scott                                    
MATTHEW R. SCOTT